# THE WEST JERSEY RAILROAD COMPANY v. THE TRENTON CAR WORKS COMPANY.

1. In the case of an executory contract for the sale of an article not in existence, but *to be* manufactured, and where the contract price is paid in advance, no title passes until the thing is completely finished, and is either delivered to the orderer, or is appropriated to his benefit, or set apart for him, or is accepted by him.

2. A conversion may consist in the taking of a chattel without the license of the owner, and by the party so taking it applying it to his own use.

3. In every case in which the inquiry arises whether there has been a conversion, the only point to be settled is, whether the defendant applied to his own use the property of another without his permission, and without legal right. His motive for so doing, or the state of his knowledge with reference to the right of such owner, are of no importance, and cannot, in any respect, affect the case.

West Jersey Railroad Co. v. Trenton Car Works Co.

Error to the Supreme Court.

This was an action of trover and conversion, brought by the Trenton Car Works Company against the West Jersey Railroad Company, and charging them with converting to their use one passenger railway car, lettered Cape May and Millville Railroad, of great value, to wit, of the value of ten thousand dollars. The case was tried at the Mercer Circuit, at the term of January, 1866.

After the testimony was closed at the trial, the defendants, by their counsel, insisted before the court that the matters produced and given in evidence on the part of said defendants, were sufficient, and ought to be admitted and allowed, as decisive evidence, to entitle the defendants to a verdict, and to bar the plaintiffs of their action. And the court having, thereupon, delivered its opinion to the jury, that the same was not sufficient to bar the said plaintiffs of their action aforesaid, the said defendants excepted thereto.

The court then charged the jury upon the facts and law of the case, which charge, with the several exceptions thereto taken, as the same appear upon the bill of exceptions, was as follows :

" 1. That the furnishing of the plush and reps, in the manner disclosed in the evidence, did not, of itself, vest the title to the cars, or any of them, in Charles B. Dungan.

To which said opinion of the said justice the said counsel for the defendants, did, then and there, on the behalf of the said defendants, except.

" 2. That the question whether the plaintiffs had ratified the delivery of the car in dispute, was a matter for the consideration and decision of the jury ; and thereupon, the counsel of the defendants, requested the court to charge that the conduct of George A. Allen amounted to a ratification, which the court refused. [Excepted to by defendants.]

" 3. That the jury must decide from the evidence to what

point the defendants undertook to carry the car in question. Whereupon the counsel of the defendants asked the court to charge that it was the implied contract of the defendants to carry said car to Glassboro', which the court refused. [Excepted to by defendants.]

" 4. The counsel of the defendants asked the court further to charge, that the fact of the car being in the possession of the foreman of the plaintiffs, in the manner described in the evidence, was conclusive evidence of his right to take the car from the defendants at the place of its destination, which was refused. [Excepted to by defendants.]

" 5. And further to charge, that the defendants never had any possession of the car for the purpose of delivering it to any one, but simply to pass it over their road, which was refused. [Excepted to by defendants.]

" And further to charge, that the receipt, if a consignment to any one, was a consignment to the Cape May and Millville Railroad Company, which was refused. [Excepted to by defendants.]

" 7. The said justice did further declare and deliver his opinion to the jury, that a conversation may consist in the taking of a chattel without the license of the owner, and by the party so taking it applying it to his own use. ' Was there such a taking and appropriation of the car in question by the defendants? It does not appear to be disputed that, for several days after the car came into the possession of Mr. Dungan, it was run between Camden and Cape May, over the West Jersey Railroad, and the lower roads; that the car was so run as a part of the complement of cars to be furnished by Mr. Dungan, on the Cape May and Millville Railroad, under an agreement between him, or his company, with the defendants; and that this car, in common with the others so furnished, was used by the defendants, for the accommodation of their local passengers, while it was passing and repassing on their road. Upon the assumption that the car then belonged to the plaintiffs, I regard this use of it, by the defendants, as a plain conversion of it on their part.

The using of an article of personal property, without the license of the owner, is a conversion. And so far has this doctrine been carried, that it has been held that if a man find an article, and use it, such act is wrongful, and amounts to a conversion.

"You will observe that in this case, assuming that this car was the property of the plaintiffs, that each time the defendants put passengers into it, or otherwise meddled with it, for their own ends, such act was wrongful, so far as the plaintiffs were concerned, who had given them no such privilege. The only claim of right to which they pretended, or now pretend, was and is, that Mr. Dungan, or the Cape May and Millville Railroad, put the car upon their track under an arrangement with them, and then authorized its use by them. But this claim of right entirely fails, if you shall decide that neither Mr. Dungan, nor the Cape May and Millville Railroad, were the owners of this chattel. Possessed of no legal right in this car, Mr. Dungan could obviously confer none, either upon the Cape May and Millville Railroad, or on the defendants. Nor does it make any difference whether or no the defendants were aware that Mr. Dungan was destitute of all right in the article in question. It is not necessary to charge a person in law with the conversion of the property of another, to prove that he was possessed of a knowledge, that the act which he did, with regard to such property, was wrong. The rule of law has long been well settled on this subject. A man may pay full value in the purchase of an article, and act in entire good faith in taking it into his possession, and appropriating it to his use; and yet, if it turn out that the party from whom he purchased it had no title, he is guilty of a conversion, as against the true owner, and is liable to damages in an action of trover.

"In every case in which the inquiry arises whether a conversion has been committed, the only point to be settled is, whether the defendant applied to his own use the property of another, without his permission, and without legal right. His motives for so doing, or the state of his knowledge with

reference to the right of such owner, are of no importance, and cannot in any respect affect the case.

"Nor do I think, as was insisted in the argument, that a demand for the car, or a notice to the defendants, that it did not belong to Mr. Dungan or to the Cape May and Millville Railroad Company, was requisite, before a liability attached to respond in damages to the plaintiffs.

"A demand or notice is only necessary in those cases in which the party sought to be charged came lawfully in possession of the property. That was not the case here. The defendants did not acquire, after they had delivered the car, any right whatever to use it, or to its possession. From the time specified, their entire dealing with the car, from the beginning to the end, was wholly tortious, and without the least color of right. If they were misled by Mr. Dungan, or the Cape May and Millville Railroad Company, into the belief that a right was given to them to use this car, that is their misfortune. But the delusion or misconception of the defendants, cannot deprive the plaintiffs of any of their legal rights, one of which was, to possess any article of their property free from all use by others without their consent."

To which opinion of the said justice the said counsel for the defendants did, then and there, and on behalf of the said defendants, except.

"And inasmuch as the said several matters, so produced and given in evidence, &c., do not appear upon the record, &c., thereupon the said justice put his seal to the said bill of exceptions, &c., June 6th, 1866.

"M. BEASLEY, C. J."

A verdict was rendered for the plaintiffs for $3727.80, on which final judgment was entered at the Term of February, then next ensuing.

A writ of error having been brought to this court, the following errors were assigned for the reversal of the judgment:

1. That the declaration and the matters and things con-

tained therein, were not sufficient in law for the said Trenton Car Works Company to have or maintain their action against the said West Jersey Railroad Company.

2. That the charge, in the several particulars above set forth, was illegal.

3. That the refusal of the justice to charge, as requested by the said plaintiffs in error, was illegal.

4. That the opinion of said justice, delivered to the jury, was contrary to law.

5. General error.

The case was argued upon the errors assigned, by—

*E. W. Scudder* and *A. Browning*, for plaintiffs in error.

*E. T. Green* and *B. Van Syckel*, for defendants in error.

VREDENBURGH, J. This was an action of trover, brought by the car works company against the railroad company, to recover the value of a passenger railroad car. The plaintiffs below recovered a verdict for $3700, and the case is now here on exceptions to the charge of the court.

The first exception is, that the court charged that the furnishing the plush and reps, in the manner disclosed in the evidence, did not, of itself, vest the title in the cars, or any of them, in Charles B. Dungan.

The evidence disclosed, that one Prevost, in the fall of 1862, agreed with Dungan, to construct for him five passenger cars, to be finished and put on the track at Trenton by the fifteenth of May, 1863, for $2250 each; that on the sixth and twenty-third of May, 1863, Dungan furnished to Prevost $2701.80 in plush and reps, for the fronts and backs of the seats, the costs of the same to be allowed from the price of the cars. On the eighteenth May, 1863, the plaintiffs were incorporated, and Prevost made their president, continuing so until the twenty-sixth September, 1863; that on the ninth of July, 1863, Prevost conveyed all his stock and other

property connected with his car factory, including this plush and reps, and a skeleton car, valued at $1286.34, to the plaintiffs; that after this assignment to the car company by Prevost, Dungan and Prevost met, and Prevost, as president of the car company, agreed that the five cars should be finished as quickly as possible, according to the said agreement, except as to price, which was to be increased, but no definite sum fixed, and the aforesaid agreement, as to the plush and reps, carried out. The car company went on and finished all the five cars, putting in each the requisite quantity of the plush and reps. It does not appear that at the time the skeleton car was transferred as aforesaid, by Prevost to the car company, that any of the plush and reps had been put upon it. Dungan never paid for any of the cars, otherwise than by the furnishing, as aforesaid, of the said plush and reps.

Did this furnishing, of itself, vest the title of this car in Dungan?

The railroad company claim under Dungan. They claim that they paid to Prevost, on the twenty-third May, $2700 in plush and reps, which was more than enough to pay for the whole car at the contract price of $2200, and that this car, as it progressed to completion, from its beginning to its end, always belonged to Dungan, and that Prevost could not transfer it to the car company, and that the conveyance of the skeleton by Prevost to the car company was void. It does not appear by the case that, when the plush and reps were furnished to Prevost on the twenty-third of May, 1863, that any part of this car was *in esse*.

Taking this evidence, then, most strongly in favor of the railroad company, it is the case of an executory contract for the sale of an article not in existence, but *to be* manufactured, and where the contract price is paid in advance.

But in such cases, no title passes until the thing is completely finished, and is either delivered to the orderer, or is appropriated to his benefit, or set apart for him, or is accepted by him. *Story on Sales*, § 233, and cases there cited; *Muck-*

*low* v. *Mangles*, 1 *Taunt.* 318 ; *Laidler* v. *Burlinson*, 2 *Mees. & W.* 614 ; *Clarke* v. *Spence*, 4 *Adol. & El.* 448.

This is not a case where the car was to have been built under the superintendence of a person appointed by the orderer, or where, by the terms of the contract, stipulated instalments of the price were to be made at particular stages of the work.

Taking the evidence, therefore, in its strongest possible aspect against the car company, it was a case pure and simple, of payment in advance, for an article not *in esse*, but to be manufactured, and, consequently, the skeleton car belonged to Prevost, and passed from him to the car company. Nor does it alter the case, if, after such transfer, the car company went on and finished the car under the original agreement.

The title would not pass until it was entirely finished, and either delivered to the orderer, or appropriated to his benefit, or set apart for him, or accepted by him.

In neither case would the simple payment of the money in advance vest the title in Dungan, and so no error is shown in the charge.

Nor would it alter the case if we do not consider this furnishing of the plush and reps as payment, but as the property of Dungan, and put in the car by the manufacturer. The car would still remain the property of the manufacturer, and the plush and reps pass to him as the owner of the car.

It would not, then, be a case where the orderer furnished all the materials for the car, but only a very small proportion of them, the great bulk of them being furnished by the manufacturer. In such cases the property in the thing manufactured remains in the manufacturer. 2 *Kent* 361 ; *Merritt* v. *Johnson*, 7 *Johns. R.* 473 ; *Atkinson* v. *Bell*, 8 *Barn. & Cress.* 277. There is no error in the charge in this regard.

The next error complained of is, that the court refused to charge that the conduct of George A. Allen amounted to a ratification of the delivery of the car in dispute, to Dungan, but charged that that was a matter for the jury. George A. Allen, on the twelfth of April, 1863, was the agent of the car

West Jersey Railroad Co. v. Trenton Car Works Co.

company, and the car being finished, they were anxious to deliver it, and get the purchase money. It appears by the evidence that, after the skeleton car had been passed by Prevost to the car company, it was agreed, between Prevost and Dungan, that the price of the car should be enlarged, but how much, had never been settled or agreed upon. Under these circumstances, Allen shipped the car to Millville, to his own order, and without any further action on the part of Allen or the car company, it got into the possession of Dungan. How this conduct, on the part of Allen, ratified any delivery by the car company, is more than I can see. It was going quite as far as the railroad company had a right to ask, when the court told the jury that it was for their consideration whether the car company had ratified any delivery or not.

The next complaint is, that the court refused to charge that it was the implied contract of the defendants to carry said car to Glassboro', but charged that it was for the jury to decide to what point the defendants undertook to carry the car.

It was immaterial to the matter in dispute whether the defendants agreed to carry it to Glassboro', or elsewhere. Suppose it was the implied contract to carry the car to Glassboro', what effect could it have had on the case? Could it prove either that the car company did not own the car, or that the defendants had not converted it?

The next complaint is, that the court refused to charge that the fact of the car being in possession of the foreman of the car company, in the manner described in the evidence, was conclusive of the right of Dungan to take the car at the place of its destination.

But the manner in which the foreman of the car company had possession, as described by the evidence, was that he was sent by the car company with the car to see that it ran properly, that the journals did not heat, and that he had no authority to deliver it to any one. For the court to have charged as asked, would have been, first, to charge a fact to

exist, the contrary of which was distinctly proved, and then from such unproved fact, to draw an illegal inference.

The next complaint is, that the court refused to charge that the railroad company never had any possession of the car for the purpose of delivering it to any one, but simply to pass it over their road.

But this would have been to charge against the proof. The proof shows that it was received by them to pass over their road to the order of George A. Allen, the agent of the car company, for that purpose, and not simply to pass it over their road. The evidence further shows, that for whatever purpose they possessed the car, whether to pass it over their road simply or not, that they did, in fact, use it for another purpose, viz., to carry passengers in it over their road.

The next error complained of is, that the court refused to charge that the receipt, if a consignment to any one, was a consignment to the Cape May and Millville Railroad.

The receipt reads as follows: " Trenton, September 12th, 1863. Received of Trenton Car Company one passenger car, Cape May and Millville Railroad, Millville, to order of George A. Allen, marked way line to Camden, which we promise to forward to the railroad station in Camden, subject to the conditions expressed on the back of this receipt."

Now when defendants undertook to forward this car, it was plainly to the order of Allen, at Millville; but even if otherwise, the matter was entirely immaterial, both as to the question of property and of conversion.

The next complaint is, that the court charged that the running of this car, for several days after it came into the possession of Dungan, between Camden and Cape May, over the defendants' and the lower roads, as a part of the complement of cars to be furnished by Dungan, under an agreement between them, and the using of it by the defendants, in common with the others so furnished, for the accommodation of their local passengers, while it was passing and re-passing on their road, was a conversion.

The defendants and the Glassboro' and Cape May and

West Jersey Railroad Co. v. Trenton Car Works Co.

Millville roads run in connection, and each furnish their proportion of cars which run over all the roads, carrying the through and way passengers. Dungan, after he illegally got possession of this car, put it on the through line as part of the complement he or the Cape May road was to furnish, and it was so used for about two weeks. This was, on the part of the defendants, simply using this car for their own gain, by an agreement with Dungan. While passing over defendants' road, it was used by them, in point of fact, as much as their own cars were, carrying their through as well as their local passengers. Dungan had got possession of the car wrongfully ; he could not use it himself without a conversion, nor could he give any better right to the defendants than he had himself. The very moment the defendants put passengers in it for their own profit, it was a conversion.

The evidence of conversion in this case is very ample. When the car first came to Camden, the defendants' contract was to carry it forward as freight. Instead of doing so, they filled it with their own passengers. This was a conversion, at the option of the plaintiffs. They continued to use it for a couple of weeks afterwards, by agreement with Dungan. This was a conversion. Instead of delivering the car to Allen, as they had contracted, they delivered it to Dungan, which was also a conversion ; and, finally, before suit brought, they put their own name upon the car, and otherwise put it out of the power of the plaintiffs ever again to get possession of it.

I see no error in the proceedings below, and they should be affirmed.

*For affirmance*—ZABRISKIE, C., HAINES, VREDENBURGH, BEDLE, DALRIMPLE, WOODHULL, CORNELISON, FORT, WALES, CLEMENT. 10.

*For reversal*—None.

Judgment affirmed.

CITED in *Elliott et al.* v. *Edwards, et al.* 6 *Vroom* 268.